UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Allen Rheaume,

    Petitioner,

v.                                                        Civil Action No. 2:16-cv-303-cr-jmc

Lisa Menard,

    Respondent.

## REPORT AND RECOMMENDATION
(Docs. 3, 5, 9, 11, 13)

Allen Rheaume, proceeding *pro se*, has filed a Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a person in state custody. (Doc. 5.) On June 14, 2004, Rheaume pleaded guilty in state court to one count of lewd and lascivious conduct in violation of Vt. Stat. Ann. tit. 13, § 2601, and to being a habitual offender under Vt. Stat. Ann. tit. 13, § 11. *State v. Rheaume*, Docket No. 245-3-04 Frcr (Vt. Sup. Ct.) (Doc. 9-1); (*see also* Doc. 5 at 1; Doc. 6-25 at 19). The court originally sentenced Rheaume to 55 days to life imprisonment, all suspended except for 55 days to five years. (Doc. 9-1 at 3.) This sentence was later amended and Rheaume was placed on probation based on credit for time served. (*Id.* at 3–4.) By January 2008, Rheaume had violated probation four times and the trial court revoked his probation, imposing the original sentence of 55 days to life imprisonment. (*Id.* at 5–11.) Almost nine years later, on November 7, 2016, Rheaume filed the pending Petition, collaterally challenging the judgments of conviction and his sentence. (Doc. 5.) Therein, Rheaume asserts that the charged offense of lewd and lascivious conduct is "missing the element of 'public' in the charging [I]nformation(s)." (*Id.* at 5.)

Respondent Lisa Menard, Commissioner of the Vermont Department of Corrections (DOC), has moved to dismiss Rheaume's Petition on the grounds that it is barred by the statute of limitations under the Antiterrorism and Effective Death Penalty Act (AEDPA), and Rheaume is not entitled to equitable tolling of that statute. (Doc. 9.) Rheaume opposes the motion. (Doc. 10.)

For the reasons stated below, I recommend that Menard's Motion to Dismiss (Doc. 9) be GRANTED and Rheaume's Petition (Doc. 5) be DISMISSED. If the court adopts these recommendations, I further recommend that Rheaume's Motion for Appointment of Counsel (Doc. 3), Rheaume's Motion for Summary Judgment (Doc. 11), and Menard's Request for an Extension to the Deadline for Responding to Rheaume's Motion for Summary Judgment (Doc. 13), each be DENIED as moot.

## Background

Because Menard's Motion to Dismiss concerns the timeliness of Rheaume's Petition, it is necessary to review the procedural history in this matter and related cases in some detail. As recounted by the Vermont Supreme Court, in 2004 (*see* Doc. 9-1 at 1) Rheaume forced his way into the home of a minor, attempted to "touch her on the neck and breast, and then sat on the couch rubbing his exposed penis while he grabbed at [the minor] and her friend." *In re Rheaume*, Supreme Court Docket No. 2016–220, 2016 WL 6562431, at *1 (Vt. Nov. 4, 2016).

Rheaume pleaded guilty to one count of lewd and lascivious conduct in violation of Vt. Stat. Ann. tit. 13, § 2601, and to being a habitual criminal under Vt. Stat. Ann. tit. 13 § 11. (Doc. 9-1 at 2; *see also* Doc. 5 at 1; Doc. 6-25 at 19.) On June 14, 2004, Rheaume was sentenced to imprisonment for 55 days to life, all suspended except for 55 days to five years.

2

(Doc. 9-1 at 3.)  Following his sentencing, Rheaume filed two motions for sentence reconsideration.  (Doc. 9-1 at 3.)  On September 28, 2004, the first motion was denied as moot and the second was granted.  (*Id.*)  The trial court ultimately sentenced Rheaume to 55 days to life, all suspended except for 55 days to 24 months, and Rheaume was placed on probation.  (*Id.* at 3–4.)  The State subsequently filed four probation violations against him.  (*Id.* at 5–11.)  After the fourth violation, the trial court revoked Rheaume's probation and imposed the previously suspended sentence of 55 days to life on January 30, 2008.  (*Id.* at 11; *see also* Doc. 6-25 at 51 (Probation Revocation Mittimus).)

Rheaume states he did not file a direct appeal (Doc. 5 at 2, 6), but the record indicates that on February 13, 2009, his attorney, Dawn Seibert, submitted a letter to the Vermont Supreme Court advising that Rheaume's case should have been docketed as an automatic appeal (Doc. 12-1 at 1).  Soon thereafter, Rheaume himself submitted a letter to the court stating that Seibert's request for an appeal was made without his consent and he "wanted the appeal dismissed." (*Id.*)  On January 6, 2010, the court dismissed the appeal consistent with Rheaume's written request.  (*Id.* at 3; *see also* Doc. 9-1 at 14.)  Rheaume filed a subsequent appeal challenging his probation revocation on April 13, 2010 (Doc. 9-1 at 14), arguing that "the lower court abused its discretion by revoking his probation and imposing his original sentence."  Br. of Appellant Allen W. Rheaume, *Vermont v. Rheaume*, No. 2010-156, 2010 WL 3597419, at *3 (Vt. Aug. 25, 2010).  The Vermont Supreme Court affirmed the revocation of Rheaume's probation and imposition of the underlying sentence of 55 days to life in December 2010.  *State v. Rheaume*, No. 2010–156, 2010 WL 7789280, at *1–2 (Vt. Dec. 8, 2010).

Menard identifies three petitions for postconviction relief (PCR) filed by Rheaume in August 2011, December 2013, and February 2015.[1] (Doc. 9 at 4–5, 7.) In the first petition, Rheaume claimed he received ineffective assistance of counsel during a probation violation hearing. *See In re Rheaume*, No. 2012–354, 2013 WL 2631318, at *1 (Vt. Apr. 1, 2013). The Vermont Supreme Court denied this petition and affirmed the trial court's holding that Rheaume's attorney's performance "was not deficient as a matter of law." *Id.* In the second petition, Rheaume asserted that his guilty plea should not have been accepted because the trial court did not properly "inquire into the factual basis" of the charge against him. *See In re Rheaume*, No. 2015–078, 2016 WL 181668, at *2 (Vt. Jan. 7, 2016). The trial court rejected this petition, granting summary judgment to the State, and the Vermont Supreme Court affirmed. *Id.* at *1, *3.

Regarding Rheaume's third PCR petition, both Rheaume and the State moved for summary judgment. Rheaume argued that the State could not prove the charge of "open and gross lewdness and lascivious behavior," because the relevant conduct did not occur "in a public place or in public view," but rather, occurred "in the living room of a private home." (Doc. 8-1 at 4 (internal quotation marks omitted)); *see also In re Rheaume*, Docket No. 56-2-15 Frcv (Vt. Sup. Ct. 2016) (Doc. 9-2 at 1). The trial court rejected this argument and granted summary judgment in favor of the State, explaining that it could not "find any authority for the proposition that 'occurrence in a public place or in public view' [wa]s an element of the offense." (Doc. 8-1 at 4 (quoting *State v. Benoit*, 158 Vt. 359).) The Vermont Supreme Court

---

[1] The three PCR petitions discussed by Menard (Doc. 9 at 4–5, 7) and filed by Rheaume in Vermont state courts, are the only PCR petitions raised in the filings before this court. There may, however, be other PCR petitions that have not been included or referenced in the parties' filings, especially given the numerous state court dockets associated with Rheaume's conviction.

4

affirmed the grant of summary judgment, *In re Rheaume*, 2016 WL 6562431, at *1, and Rheaume filed the pending § 2254 Petition on November 7, 2016,[2] again claiming that the conduct underlying the conviction was not "public" and that the public element was not included "in the charging [I]nformation(s)." (Doc. 5 at 5, 15.)

## Discussion

### I. AEDPA Limitations Period

Menard argues that Rheaume's Petition is barred by the AEDPA statute of limitations. (Doc. 9 at 5–7.) Under AEDPA, "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). This one-year limitations period begins from the latest of:

   (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

   (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

   (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

   (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

---

[2] Rheaume's Petition was apparently signed on November 7, 2016 (Doc. 5 at 15), and the court assumes it was filed on the same date, pursuant to the "prison mailbox rule." That rule provides that "a *pro se* document is deemed filed at the time it was delivered to 'prison authorities for forwarding to the court clerk.'" *Barron v. Pallito*, Civil Action No. 1:09–CV–209, 2010 WL 3812233, at *2 (D. Vt. Aug. 12, 2010) (quoting *Houston v. Lack*, 487 U.S. 266, 276 (1988)). If it is unclear when a *pro se* inmate mailed his document, "courts have assumed that the petitioner submitted [it] on the same date it was purportedly signed and dated." *Id.* (quoting *Tracy v. Freshwater*, No. 5:01-CV-0500(NPM/GHL), 2008 WL 850594, at *1 (N.D.N.Y. Mar. 28, 2008), *vacated and remanded on other grounds*, 623 F.3d 90 (2d Cir. 2010)).

*Id.* Subsection (A) controls here—it is the only subsection referenced by Rheaume, who does not argue, nor does the record indicate, that he was prevented from filing his Petition by an unconstitutional law, that he is asserting a newly recognized constitutional right, or that he was prevented from discovering the factual basis for his claim. (*See* Doc. 5; Doc. 10 at 1); *see also Joyner v. Phelps*, 557 F. Supp. 2d 477, 479 (D. Del. 2008) ("Because he does not allege, and the court does not discern, any facts triggering the application of § 2244(d)(1)(B), (C), or (D), the one-year period of limitations in this case began to run when petitioner's conviction became final under § 2244(d)(1)(A)."). Accordingly, the statute of limitations began to run on Rheaume's Petition when the "judgment" against him "became final," either by "the conclusion of direct review" or by "the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

There are two judgments against Rheaume that are potentially applicable to the § 2244(d)(1)(A) statute of limitations calculation. The first is Rheaume's original conviction. The second is the sentence imposed after Rheaume's probation was revoked. Below I calculate the statute of limitations for each judgment respectively. By either calculation, Rheaume has filed his Petition at least three years too late. Accordingly, I recommend that Menard's Motion to Dismiss (Doc. 9) be GRANTED and Rheaume's Petition (Doc. 5) be DISMISSED.

### A.     Underlying Conviction as the Relevant "Judgment"

Rheaume contends that the Information charging him with lewd and lascivious conduct lacked an essential element of the offense because it failed to allege that the conduct occurred in public. (Doc. 5 at 5, 15.) Thus Rheaume challenges the underlying judgment of conviction

6

resulting in the imposition of a term of probation.  Where the habeas petition challenges "any *substantive issues relating to a trial court judgment* which imposes probation," the statute of limitations begins to run "*when the judgment imposing probation becomes final.*"  *Freeman v. Little*, No. 1:12–cv–0081–REB, 2013 WL 4495079, at *4 (D. Idaho, Aug. 19, 2013) (internal quotation marks omitted) (collecting cases).  The court therefore must determine when the original judgment imposing Rheaume's probation became final.

Rheaume was convicted by way of a guilty plea on June 14, 2004, and was sentenced that day.  (Doc. 9-1 at 2–3; *see also* Doc. 6-25 at 12.)  He did not file a direct appeal.  (Doc. 5 at 2, 6.)  He now argues in his Response to Menard's Motion to Dismiss that he should have benefited from the automatic appeal provisions under Vermont Rule of Appellate Procedure 3.[3]  (Doc. 10 at 1–5.)  As noted above, however, Rheaume's attorney sought an automatic appeal, which Rheaume sought to rescind days later.  (Doc. 12-1 at 1.)  Ultimately, on January 6, 2010, the Vermont Supreme Court dismissed Rheaume's appeal "pursuant to [Rheaume's] voluntarily dismissal."  (*Id.* at 3; *see also* Doc. 9-1 at 14.)  Interpreting Rheaume's claims

---

[3] In a convoluted "Reply Memorandum" (Doc. 14), which the court construes as a surreply to Menard's Motion, Rheaume seems to contradict this argument, stating that he was *not* subject to an automatic appeal (*id.* at 1), and that he could have filed an appeal in this matter "any time prior" to when Vt. R. App. P. 3 was amended in October 2015 (*id.* at 3).  These claims are both meritless and of no consequence.  First, Rheaume was in fact entitled to an automatic appeal under the Rules of Appellate Procedure at the time, *see* Vt. R. App. P. 3(b)(2) (2004))—an issue that his attorney raised with the Vermont Supreme Court (Doc. 12-1 at 1).  Second, the amendment of a Vermont Rule of Appellate Procedure has no bearing on the timeliness of a § 2254 habeas petition.

Although the court must afford *pro se* litigants like Rheaume "special solicitude" due to their lack of legal training and experience, including "leniency in the enforcement of . . . procedural rules," *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010), the court also notes that the filing of a surreply is not permitted under the Local Rules, and Rheaume did not seek special permission to file a surreply.  *See* L.R. 7(a); *Chaney v. Stewart*, Civil Action No. 2:13-CV-246, 2015 WL 1538021, at *1 (D. Vt. Apr. 7, 2015) ("The Local Rules do not provide for the filing of a surreply, and [plaintiff] has neither requested leave of court nor presented extraordinary circumstances justifying the filing in this case.").

7

liberally, *see Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010), I find that his direct appeal concluded on this date. *See* 28 U.S.C. § 2244(d)(1)(A). Thus, the statute of limitations began running on January 6, 2010, and Rheaume was required to file his Petition by January 6, 2011—one year later. (*See* Doc. 12 at 2.) Rheaume did not file his Petition until November 7, 2016, over five years too late.

Motions seeking postconviction relief and "other collateral review," including motions for sentence reconsideration, toll the one-year statute of limitations period. 28 U.S.C. § 2244(d)(2); *see also Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam) (noting that collateral review tolls the limitations period but "does not reset the date from which" it runs); *Wall v. Kholi*, 562 U.S. 545, 555–56 (2011) (finding that a sentence reduction motion tolled the AEDPA statute of limitations); *Barron v. Pallito*, Civil Action No. 1:12–cv–92, 2012 WL 5472397, at *5 (D. Vt. Nov. 8, 2012) (finding that a sentence reconsideration motion tolled the AEDPA limitations period). Applied here, however, tolling does not save Rheaume's Petition because the limitations period expired on January 6, 2011, before Rheaume filed his three PCR petitions in August 2011, December 2013, and February 2015, respectively.[4] *See, e.g.*, *Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir. 2001) ("[A] state court petition . . . that is filed following the expiration of the federal limitations period cannot toll that period because there is no period remaining to be tolled." (internal quotation marks omitted)), *reh'g denied*, 273 F.3d 1123 (11th Cir. 2001). Accordingly, unless saved by equitable tolling, Rheaume's Petition is barred by AEDPA's statute of limitations.

---

[4] Conversely, Rheaume's motions for sentence reconsideration were filed and resolved in 2004 (Doc. 9-1 at 3), several years prior to when the statute of limitations began running on January 6, 2010.

### B. Probation Revocation Sentence as the Relevant "Judgment"

Alternatively, the court may interpret the relevant judgment under AEDPA to be the sentence imposed on Rheaume following his probation revocation. Under this interpretation, Rheaume's Petition is also barred by the statute of limitations, as discussed below.

The Supreme Court has explained that "[f]inal judgment in a criminal case means sentence. The sentence is the judgment." *Burton v. Stewart*, 549 U.S. 147, 156 (2007) (quoting *Berman v. United States*, 302 U.S. 211, 212 (1937)). In *Burton*, the Supreme Court held that where a habeas petition was filed prior to the sentence being subsequently amended, the "judgment was not final for purposes of triggering AEDPA's statute of limitations." *Id.* at 157. Applying *Burton*, the Eleventh Circuit explained that "the judgment to which AEDPA refers is the underlying conviction *and most recent sentence* that authorizes the petitioner's current detention." *Ferreira v. Sec'y, Dep't of Corr.*, 494 F.3d 1286, 1292 (11th Cir. 2007) (emphasis added). The court held that the statute of limitations ran from when the petitioner's *corrected* sentence became final, several years after his original conviction, even though "the only claims in [petitioner's] federal habeas application concern[ed] his original conviction." *Id.* at 1288, 1292–93. Similarly, in *Green v. Price*, the Eleventh Circuit found that the timeliness of the petitioner's § 2254 petition should have been based on when the judgment reinstating the original sentence became final. 439 F. App'x 777, 783 (11th Cir. 2011). *Green* presented facts nearly identical to those presented here—the petitioner was on probation after his ten-year sentence of imprisonment was suspended, but the original sentence was reinstated following numerous probation violations and subsequent probation revocation. *Id.* at 779–81.

Lower courts in this circuit have followed the Eleventh Circuit's approach in cases where petitioners have been subject to resentencing. *See, e.g.*, *Velasquez v. Ercole*, 878 F. Supp. 2d 387, 397 (E.D.N.Y. 2012) (applying *Ferreira* and holding that the AEDPA statute of limitations began to run when petitioner's resentencing became final); *McFadden v. Pataki*, No. 06 Civ. 13330(KMK)(PED), 2011 WL 10500868, at *14 (S.D.N.Y. Apr. 6, 2011) ("[W]here a party is convicted, sentenced, and then subsequently re-sentenced, the AEDPA's statute of limitations does not begin to run . . . until the re-sentencing becomes final.").

Under this approach, the relevant judgment is the January 30, 2008 probation revocation when Rheaume's original sentence was reinstated (*see* Doc. 9-1 at 11; *see also* Doc. 6-25 at 51 (Probation Revocation Mittimus)), because this is the "most recent" sentence authorizing Rheaume's current imprisonment, *see Ferreira*, 494 F.3d at 1292. Accordingly, the statute of limitations began to run when the January 30, 2008 sentence "became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A).

"Direct review," as used in § 2244(d)(1)(A), includes both direct appeal in state court, and the time for petitioner to file a petition for a writ of certiorari with the United States Supreme Court. *Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001); *see also Hall v. Sorrell*, Civil Action No. 5:14–cv–84, 2014 WL 10246235, at *3 (D. Vt. Sept. 24, 2014), *report and recommendation adopted*, 2015 WL 4873227 (D. Vt. Aug. 13, 2015). Therefore, "the limitations period for state prisoners . . . begins to run only after the denial of certiorari or the expiration of time for seeking certiorari." *Williams*, 237 F.3d at 151. A petitioner has 90 days after his conviction is affirmed by a court of last resort to seek certiorari with the Supreme

10

Court.  *See, e.g.*, *Clay v. United States*, 537 U.S. 522, 525 (2003).  After the 90-day period, if the petitioner has failed to seek certiorari, the conviction is final and the one-year period for seeking habeas relief begins to run.  *Id.*; *see also Williams*, 237 F.3d at 151.

Rheaume appealed the January 30, 2008 probation revocation and sentence in 2010 (*see* Doc. 9-1 at 14 (Notice of Appeal filed with trial court on April 13, 2010)), which the Vermont Supreme Court affirmed on December 8, 2010, *State v. Rheaume*, 2010 WL 7789280, at *1–2.  Rheaume therefore had 90 days from December 8, 2010 to seek certiorari with the United States Supreme Court.  *See Clay*, 537 U.S. at 525.  Rheaume did not file a certiorari petition, however, and his time to do so expired on March 8, 2011.  On that date, Rheaume's reinstated sentence became final and the AEDPA one-year statute of limitations began to run, making Rheaume's habeas petition due one year later on March 8, 2012, notwithstanding any tolling.

As noted above, however, state court PCR petitions typically toll the AEDPA statute of limitations period.  *See* 28 U.S.C. § 2244(d)(2).  Assuming Rheaume's August 2011 PCR petition, which alleged ineffective assistance of counsel during the January 2008 probation violation hearing, was filed on August 1, 2011,[5] *see In re Rheaume*, 2013 WL 2631318, at *1, 145 days of the one-year statute of limitations had elapsed by this date (from March 8, 2011, when Rheaume's time to seek certiorari expired, to July 31, 2011, the day before he filed the PCR petition).  Further assuming that this petition was sufficient to toll the statute of limitations, the one-year period would have been tolled from August 1, 2011 (the date of the

---

[5] The court can only assume a date for the filing of this PCR petition because the relevant Vermont Supreme Court opinion does not specify when in August 2011 Rheaume's PCR petition was filed, and the relevant docket is not before the court.  *See In re Rheaume*, 2013 WL 2631318, at *1.  Viewing the matter in favor of Rheaume, the court assumes the filing date was the first day of August 2011.

11

petition's presumed filing) until April 1, 2013, when the Vermont Supreme Court affirmed the denial of Rheaume's PCR petition. *See id.* The statute of limitations then would have begun running again, with 220 days left for Rheaume to file his § 2254 petition. Thus, under this theory, Rheaume's petition would have been due by November 7, 2013. Rheaume did not file his Petition until November 7, 2016, three years after it was due.[6]

Accordingly, applying this alternative calculation based on the probation revocation sentence as the "final judgment," Rheaume's Petition was nevertheless filed several years too late, and is thus barred by the AEDPA statute of limitations.

## II.     Equitable Tolling

In "rare and exceptional circumstance[s]," the AEDPA limitations period may be subject to equitable tolling. *Smith*, 208 F.3d at 17 (quoting *Turner v. Johnson*, 177 F.3d 390, 391–92 (5th Cir. 1999), *cert. denied*, 528 U.S. 1007 (1999)). The Second Circuit has held that equitable tolling applies only where the petitioner demonstrates: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Rivas v. Fischer*, 687 F.3d 514, 538 (2d Cir. 2012) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)); *see also Hizbullahankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir. 2001); *Smith*, 208 F.3d at 17.

In general, *pro se* litigants are afforded "special solicitude" due to their lack of legal training and experience, including "leniency in the enforcement of . . . procedural rules."

---

[6] Rheaume's subsequent PCR petitions and his motions for sentence reconsideration have no tolling effect under this analysis. The PCR petitions were filed in December 2013, *see In re Rheaume*, 2016 WL 181668, at *1, and February 2015 (Doc. 9-2 at 1), respectively, after the statute of limitations had already elapsed on November 7, 2013, whereas the motions for sentence reconsideration were filed and resolved in 2004 (Doc. 9-1 at 3), several years before the statute of limitations began running on March 8, 2011.

12

*Tracy*, 623 F.3d at 101. However, "*pro se* status does not in itself constitute an extraordinary circumstance meriting tolling." *Doe v. Menefee*, 391 F.3d 147, 175 (2d Cir. 2004); *see also Hall*, 2014 WL 10246235, at *6 (finding that neither ignorance of the law, nor "ignorance or misunderstanding of procedural rules," were extraordinary circumstances); *Francis v. Miller*, 198 F. Supp. 2d 232, 235 (E.D.N.Y. 2002) (rejecting *pro se* petitioner's argument that ignorance of "the law and legal procedure," lack of education, and limited access to legal resources amounted to extraordinary circumstances).

Rheaume does not argue that he is entitled to equitable tolling (*see generally* Docs. 5, 6, 10), and the record does not indicate that he was pursuing his rights diligently, or that any obstacle prevented him from filing, during the period when he could have timely filed his petition. Accordingly, equitable tolling does not apply, and Rheaume's Petition (Doc. 5) is barred by the statute of limitations.

### III.    Actual Innocence

In a supplemental brief, Rheaume makes a cursory argument that he is actually innocent because the Information charging him with the offense of lewd and lascivious conduct is "missing the element of 'public.'" (Doc. 6 at 11.) This claim fails because: (1) actual innocence claims must be supported by new evidence, and Rheaume presents none here; (2) Rheaume makes a claim of legal, rather than factual, innocence; and (3) Rheaume fails to allege a federal constitutional violation.

"[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass" if he or she has otherwise procedurally defaulted federal habeas review. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013); *see also House v. Bell*, 547 U.S. 518, 536–37 (2006).

The actual innocence exception is limited to instances where the claim of innocence is both credible and compelling. *Rivas*, 687 F.3d at 541. A claim is credible if the petitioner puts forward new, reliable evidence that was not presented at trial. *Id.*; *see also Schlup v. Delo*, 513 U.S. 298, 329 (1995). A claim is compelling when the petitioner demonstrates "that no reasonable juror would have found [him] guilty," "in light of the new evidence." *Schlup*, 513 U.S. at 329; *see also Rivas*, 687 F.3d at 541. This standard applies even if, like Rheaume, the defendant pleaded guilty and did not proceed to trial. *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 114 (2d Cir. 2000).

"'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). In other words, the petitioner must show that he was not guilty, even in light of inadmissible evidence or other procedural errors. *Schlup*, 513 U.S. at 327–28; *see also Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *Doe*, 391 F.3d at 162. For example, the Eleventh Circuit determined that the actual innocence exception did not apply when a petitioner claimed he was erroneously sentenced as a career offender because one of his prior convictions was not a crime of violence. *McKay v. United States*, 657 F.3d 1190, 1198–1200 (11th Cir. 2011). Applying *Bousley*, the court explained that this claim was "one of legal, rather than factual, innocence." *Id.* at 1198 (citing *Bousley*, 523 U.S. at 623). Similarly, in *Gibbs v. United States*, the Sixth Circuit explained that "[a] challenge to the sentencing court's guidelines calculation . . . only challenges the legal process used to sentence a defendant and does not raise an argument that the defendant is ineligible for the sentence she received." 655 F.3d 473, 479 (6th Cir. 2011) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).

Finally, the actual innocence claim must be coupled with an allegation that "an independent constitutional violation occurr[ed] in the underlying state criminal proceeding" in order to warrant federal habeas relief. *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also Townsend v. Sain*, 372 U.S. 293, 317 (1963) ("[T]he existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution[—]not to correct errors of fact." *Herrera*, 506 U.S. at 400.

Rheaume's actual innocence claim fails all of these requirements. First, his claim is neither credible nor compelling—he has failed to present any new factual evidence or demonstrate that "no reasonable juror" could have found him guilty of the lewd and lascivious conduct for which he was convicted. *See Schlup*, 513 U.S. at 329. In fact, Rheaume does not contest any of the facts underlying his original conviction, instead asserting that his behavior "only occurred within the confines" of a private residence and accordingly "cannot constitute a violation" of Vt. Stat. ann. tit. 13, § 2601. (Doc. 6 at 3.) Like the petitioner in *McKay*, Rheaume thus fails to argue that he did not commit the conduct. Rather he claims that his actions did not constitute a statutory crime. *See McKay*, 657 F.3d at 1198–1200. This is insufficient because Rheaume's interpretation of Vermont law—which, not incidentally, has been squarely rejected by the Vermont Supreme Court—is an argument of legal, rather than factual, innocence. *See id.* at 1199–1200 (where petitioner made no claim of *factual* innocence of the predicate offense, actual innocence exception did not apply and claim was barred by

15

procedural default rule); *see also In re Rheaume*, 2016 WL 6562431, at *2 ("Petitioner's alleged factual disputes—that 'open' means 'in public' and that the State failed to adequately respond—are legal disputes, not disputed questions of material fact."). Finally, as discussed below, Rheaume has not asserted that a federal constitutional violation occurred during the state criminal proceedings—his claims are based entirely on a purported misapplication of Vermont law. (Doc. 5 at 5; Doc. 6 at 3); *see also* Vt. Stat. ann. tit. 13, § 2601. Accordingly, Rheaume's delay in filing his Petition is not excused by any claim of "actual innocence."

## IV.    Failure to Allege a Federal Constitutional Violation

Although not raised by Menard, assuming *arguendo* that Rheaume's Petition is not procedurally barred, Rheaume faces a jurisdictional hurdle that he cannot overcome. The Petition raises exclusively a state law claim and the court therefore lacks jurisdiction to consider it. Federal courts have jurisdiction over federal habeas petitions "only" if the petitioner has alleged that he is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see also Maleng v. Cook*, 490 U.S. 488, 490 (1989). Federal courts thus lack jurisdiction to evaluate purported violations of state law in a § 2254 petition. *See, e.g.*, *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *DiGuglielmo v. Smith*, 366 F.3d 130, 136 (2d Cir. 2004) (dismissing petition because it "d[id] not present issues of federal law"). Moreover, a petitioner cannot disguise state law claims as violations of federal law in an effort to access federal habeas review. That is, "not 'every error of state law can be transmogrified by artful argumentation into a constitutional violation.'" *Ponnapula v. Spitzer*,

297 F.3d 172, 181 (2d Cir. 2002) (quoting *Sanna v. Dipaolo*, 265 F.3d 1, 12 (1st Cir. 2001)) (finding that although petitioner "fashion[ed] []his claim" as a Due Process Clause challenge, "it provid[ed] no basis for federal habeas relief because it rest[ed] solely on a question of state law").

"Whether a federal court has subject matter jurisdiction is a question that 'may be raised at any time . . . by the court *sua sponte*,'" notwithstanding the parties' failure to raise the issue. *McGinty v. New York*, 251 F.3d 84, 90 (2d Cir. 2001) (quoting *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000)); *see also Lanza v. Lewin*, No. 9:04-CV-0678 (LEK), 2008 WL 4104454, at *5 (N.D.N.Y. Sept. 3, 2008) (court considering jurisdiction over § 2254 petition, even though it had "not been briefed by the parties on whether it lack[ed] jurisdiction"); *Sepulveda v. Coughlin*, No. 84 Civ. 7380–CSH, 1986 WL 1455, at *1 n.1 (S.D.N.Y. Jan. 28, 1986) (considering, *sua sponte*, the impact "of petitioner's parole on the [c]ourt's continued jurisdiction over the habeas corpus petition").

It is clear that Rheaume's Petition is entirely grounded in state law. He argues that he could not be convicted under the Vermont statute prohibiting "open" lewd and lascivious behavior because his behavior did not occur in public. (Doc. 5 at 5); *see also* Vt. Stat. ann. tit. 13, § 2601. The Vermont Supreme Court has adjudicated this state law claim, holding that Rheaume's conduct "was undisguised and not concealed and therefore met the statutory 'open' requirement," and that his behavior did not have to occur in public to violate the applicable statute. *In re Rheaume*, 2016 WL 6562431, at *1. In a supplemental brief, Rheaume attempts to frame his state law claim as a violation of the Sixth Amendment right "to be informed of the nature and cause of the accusation." (Doc. 6 at 7–8.) But this fleeting reference to the United

17

States Constitution cannot convert Rheaume's claim, which plainly "rests solely on a question of state law," *Ponnapula*, 297 F.3d at 182, into a federal claim appropriate for federal habeas review.

## **Conclusion**

For these reasons, I recommend that Menard's Motion to Dismiss (Doc. 9) be GRANTED and Rheaume's Petition (Doc. 5) be DISMISSED. I further recommend that Rheaume's Motion for Appointment of Counsel (Doc. 3), Rheaume's Motion for Summary Judgment (Doc. 11), and Menard's Request for an Extension to the Deadline for Responding to Rheaume's Motion for Summary Judgment (Doc. 13), each be DENIED as moot. If the court adopts these recommendations, I recommend that the court refrain from issuing a certificate of appealability because Rheaume has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Lucidore*, 209 F.3d at 111–12.

I make these recommendations for the reasons stated above and summarized as follows:

1. Rheaume's Petition is barred by the AEDPA statute of limitations, as calculated either from the date his original conviction became final or from the date his probation revocation sentence became final. *See supra* pp. 5–12.

2. Equitable tolling does not apply to Rheaume's Petition because there is no indication that he diligently pursued his rights or that an extraordinary circumstance prevented him from timely filing. *See supra* pp. 12–13.

3. Rheaume's actual innocence claim does not revive his procedurally defaulted Petition because he has not presented any new evidence of his innocence, his claim is one of

legal rather than factual innocence, and he has not made a federal constitutional claim. *See supra* pp. 13–16.

4. Even if Rheaume's Petition was not procedurally barred, the court lacks jurisdiction over it on federal habeas corpus review because it is solely based on an alleged violation of state law. *See supra* pp. 16–18.

Dated at Burlington, in the District of Vermont, this 16th day of February, 2017.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).